Stephens *v.* McNeill.

———————◇———————

26 651
1ap389

## STEPHENS *vs.* McNEILL & MONTGOMERY.

Where debtors, in the city of New York, being pressed by their creditor for payment, offered their certified check upon a bank in the city, at the same time proposing to the payee that it should be sent to Syracuse or Auburn to be cashed ; and the check, dated one day ahead, was accepted by the creditor, upon that understanding, and was immediately sent to Auburn, where the cash was obtained upon it, and the check was returned to New York with due diligence and presented for payment at the bank upon which it

was drawn, which was refused, the bank having in the mean time failed ; *Held* that the drawers were liable.

*Held also,* that it being a part of the arrangement that the check should be taken west to be cashed, the payee was entitled to a reasonable time for that purpose; and that all that was required of him was due diligence in getting it discounted, and having it forwarded to the city for demand of payment. That under the circumstances, the payee was not bound to present the check for payment on the day it bore date, or on the next day thereafter.

Where a check is negotiable by indorsement, and after having been indorsed by the payee and another person, is sued on by the payee, his possession of it, at the trial, is presumptive evidence that the check came to his hands by delivery from the owner, and is his property.

APPEAL from a judgment ordered at the Ontario circuit on a verdict.

*F. N. Bangs,* for the appellants.

*Smith & Lapham,* for the respondent.

*By the Court,* WELLES, J.   On the 5th of December, 1854, the defendants, residing and carrying on business in the city of New York, were indebted to the plaintiff in the sum of over $1200.   The plaintiff met the defendant McNeill in New York about nine o'clock in the forenoon of the same day, and told him he must have $1200 that day.   McNeill replied that he should have the money if he would call at his office at half past two o'clock—and asked him if he wanted all the defendants owed him.   The plaintiff said $1200 was all he wanted that day.   The plaintiff accordingly went to McNeill's office at half past two and waited until after four o'clock, when McNeill came in and told the plaintiff he would have to disappoint him.   He said he could not get the money. The plaintiff said he could not be disappointed.   McNeill said the best he could do was to get a check.   It appears that the plaintiff wanted the $1200 to hand to one Charles Peck to take to the western part of the state to pay on a hog contract which the plaintiff had made there.   McNeill asked the plaintiff if he could use a check, to which the plaintiff replied he

could not. He then asked Peck the same question, and received the same answer from him. The plaintiff then said he could wait no longer, and left McNeill's office, leaving Peck there with McNeill. After the plaintiff had left the office, Peck told McNeill that if he could do no better he would try the check. McNeill then sat down and filled up a check, went out, and in a few minutes returned with a certified check drawn by the defendants W. H. McNeill & Co. on the Empire City Bank, payable to the plaintiff or order, for $1200, and dated the 6th of December, the day after it was given, and handed the check to Peck, who left New York that night, about five o'clock, by the Hudson River Rail Road cars, and came to Albany, where he was detained until the next morning in consequence of the cars not connecting. He left Albany at 7 o'clock in the morning and came on to Syracuse, where he tried to get the check discounted, but failed. He then came on to Port Byron, and in the morning of December 7th, sent a Mr. Smith with the check to Auburn, where Smith got the check discounted at the Auburn City Bank and received currency for it, and the same evening Smith handed the money, the proceeds of the check, to Peck at Port Byron. On the same day, the 7th of December, the cashier of the Auburn City Bank sent forward the check to the Mercantile Bank in the city of New York, by mail, for collection, where it was received between two and three o'clock in the afternoon of the 9th of the same month of December. On the same day the check was placed in the hands of a notary public, who went to the Empire City Bank, on the same day, in order to demand and receive payment, and found the bank closed, and no one in attendance to pay the check; whereupon the notary protested the check for non-payment and made a record thereof. At the time the check was discounted by the Auburn City Bank it was duly indorsed by the plaintiff and by Peck. On the afternoon of the 5th of December, when McNeill proposed letting Peck have a check, he said he had no money in the bank. When he asked Peck if he could not use a check and was told

by Peck that he could not, he said, "Can't you use a cer-- tified check at Syracuse or Auburn?" and in reply the plaintiff said he did not know but he could; that he would try, if he, McNeill, could do no better, and then the check was made, certified, and handed to Peck as before stated. Immediately after the check was protested it was returned by the Mercantile Bank to the Auburn City Bank; It appeared that the Empire City Bank failed and stopped business on the 9th of December, 1854, between two and three o'clock in the afternoon, and on the night of the same day its banking house caught fire, and afterwards its affairs passed into the hands of a receiver. There was evidence strongly tending to show that when McNeill applied to the Empire City Bank to get the check certified, it was understood that it was to be taken west and would not be presented at the bank short of three or four days, and that upon that consideration and McNeill's promise to make the defendants' account at the bank good the next morning, the check was certified. It also appeared that in the forenoon of the 6th of December the defendants made a general deposit in the Empire City Bank of $2000, and on the 8th another of $1104.78. There were a variety of other facts given in evidence, but none essentially changing the foregoing. After the evidence was closed, the counsel for the defendants moved for a nonsuit, on the following grounds, viz: 1. That it appeared by the testimony that the plaintiff was not the holder or owner of the check in suit. 2. That the defendants were not liable on the check, under the circumstances under which it was given. 3. That due diligence had not been used in presenting the check for payment. The court refused to grant the motion for a nonsuit, and the defendants' counsel excepted. The counsel for the defendants then requested the court to charge the jury: 1. That the giving and acceptance of the check in this case, certified by the bank, was a transfer of the funds of the drawer in the bank to the drawee or holder of the check, and that the funds of the drawer to the amount of the check were absolutely transferred. 2. That it was the duty of the

drawee or holder to present the check at the bank on the next day, or at least as early as the 7th of December for payment. 3. That the failure to present the check for payment, within that time, was negligence on the part of the drawee or holder, which discharged the drawer. 4. That the acceptance of the check by the bank operated as an assignment of so much of the funds of McNeill & Co. to the payment of the check, and it became the funds of the drawee. By taking the check and then neglecting to present it until after the bank failed, he assumed the responsibility of the bank, and was not entitled to recover. 5. There was no evidence in the case that McNeill made it a condition that Stephens should take the check into the country, or should not present it on the next day after it was given, or at least on the 7th or 8th; nor any evidence of an agreement or understanding between Stephens and McNeill to that effect, or which excused the presentation of the check on the 7th. The court decided not to charge in accordance with any or either of the propositions submitted by the counsel for the defendants, to which decision the defendants' counsel excepted. The judge then stated that as he viewed the case, it depended upon the question of diligence in the presentment of the check for payment. That it was the duty of the plaintiff to present the check for payment as early as the morning of December 7th, 1854, unless he was excused by an arrangement between the parties which authorized him to take the check into the country, and thus delay its presentment. That there was no conflict of evidence on this point, and no question of fact for the jury. The defendants' counsel then stated that he did not claim there was any question for the jury, but insisted, as matter of law, that the plaintiff had not shown due diligence in presenting the check. The court directed the jury to find a verdict for the plaintiff for the amount of the check and interest; to which direction the defendants' counsel excepted. The jury rendered a verdict for the plaintiff for $1365.27.

Under these circumstances we entertain no doubt of the

liability of the defendants to pay the check in question. They were indebted to the plaintiff, who was urgent for the money to send west to meet his engagements there. McNeill, one of the defendants, urged the check upon him, knowing it was not then equivalent to money, and suggested his taking or sending it west by Peck with a view of getting the cash for it at Syracuse or Auburn. It was in pursuance of that suggestion that it was taken, and no negligence is shown on the part of the plaintiff or the holders of the check in presenting it at the bank upon which it was drawn, provided he was at liberty to take it to Auburn. That he was so at liberty, the defendants should not be permitted to deny. The facts are quite as strong against them, on this point, as if they had expressly consented to the course that was taken. Indeed, they amount not only to such consent, but to a request that the plaintiff should take the very course with the check which he did take.

It is preposterous, under the facts proved, for the defendants now to contend that the plaintiff was bound to present the check for payment on the 6th of December, the day of its date, or on the day following. All that was incumbent upon him was to use reasonable diligence in his attempts to get it discounted at Syracuse or Auburn, and that it should go forward for demand of payment at the Empire City Bank by the established modes of conveyance; which the case shows has been done, without unreasonable delay.

There is no direct evidence that the check was ever re-transferred or assigned by the Auburn City Bank to the plaintiff, or that the latter ever purchased it of any one after it was discounted by that bank; and it was at the trial and is now contended that the plaintiff should have been nonsuited for that reason, the defendants contending that it does not appear that the plaintiff is the owner or has title to the demand for which the action is brought. To this it is a sufficient answer to say that the draft is negotiable, on its face, by indorsement. That it was indorsed by the payee and also by Peck, and the in-

dorsement of the latter being general, the check was transferable by delivery; and it being in the hands of the plaintiff at the trial, the presumption is, until rebutted, that it came to his hands by delivery from the owner, and is his property. A new trial should therefore be denied.

Ordered accordingly.

[MONROE GENERAL TERM, March 1, 1858. *Johnson, Smith* and *Welles,* Justices.